No. 618          July 1, 2026          181

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Compensation of
Erick T. Dahl, Claimant.

SAIF CORPORATION
and Lane Transit District,
*Petitioners,*

*v.*

Erick T. DAHL,
*Respondent.*

Workers' Compensation Board
2201743;
A183028

Argued and submitted April 11, 2025.

Daniel Walker argued the cause and filed the briefs for petitioners.

Martie L. McQuain argued the cause and filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and DeVore, Senior Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

SAIF Corporation and Lane Transit District (collectively, employer) seek judicial review of an order issued by the Workers' Compensation Board in which the board concluded that claimant's occupational disease involving mid-back pain was compensable. In two assignments of error, employer argues that (1) the board erred by concluding that claimant's employment conditions were the major contributing cause of his occupational disease without acknowledging that claimant's similar employment conditions were previously determined not causative of similar conditions or symptoms and (2) the board's order is not supported by substantial evidence or reason. Because the record shows that the board's order was supported by substantial evidence and reason, we affirm.

Because the parties are familiar with the underlying factual and procedural history, we only briefly set out in this nonprecedential memorandum opinion those facts necessary for our discussion of each assignment of error. At the time this litigation arose in 2022, claimant worked for employer as a bus driver for approximately 26 years. In 2016, claimant filed an occupational disease claim for low- and mid-back pain, asserting that his bus driving was the major contributing cause of his back condition. Dr. Buza performed an independent medical examination (IME), noting mild tenderness around the T9 level and opined that claimant had positional muscle strain and ache. Buza diagnosed claimant with "musculoligamentous strain/pain in the lower thoracic area, secondary to posture in claimant's bus seat with underlying degenerative disease." He opined that claimant's work contributed to his musculoligamentous strain symptoms, but not to the condition or pathology. Ultimately, SAIF denied the occupational disease claim in 2016, and that denial was not appealed.

In 2022, claimant again sought treatment for back pain. Claimant was treated by Fox, PA-C (Physician Assistant-Certified), who noted that claimant had "muscle tension, likely related to his employment which places him at a higher risk for back pain from chronic sitting." Claimant was then treated by Dr. Kingsbauer, who ordered lumbar

and thoracic x-rays, which indicated an impression of "No fracture" and "Normal disc spaces."

Dr. Vetter performed an in-person IME with claimant. Claimant told Vetter about his back pain and explained that his muscular physique was such that the standard seat tended to push his shoulders forward slightly. Vetter reviewed the lumbar and thoracic spine x-rays and noted that claimant's back pain is related to "degenerative changes * * * at the T12 disc spacing, where there is marginal spurring and some disc space narrowing." Vetter did not believe that lifetime work exposure was the major cause of the degenerative changes, noting that claimant was an "exceptionally muscled gentleman" and that his muscular physique and lifelong experience with weight training and sports might be a factor. Based on Vetter's opinion, SAIF denied claimant's back condition on the basis that claimant's work was not the major contributing cause. Claimant filed a request for a hearing regarding that denial.

In support of his claim, claimant provided a concurrence letter signed by Dr. Plummer, who explained that he treated claimant on a number of occasions and believed that claimant's issue was a soft tissue problem rather than a bone or disc problem. Plummer reviewed the lumbar x-ray and concluded that the T12 level was difficult to visualize because it was not the intended target of the imaging. Plummer explained that sports and weightlifting would likely cause degeneration in the lumbar, not thoracic, spine, and regardless of whether there was bone spurring and disc narrowing at T12, as Vetter believed, those conditions would have developed as a consequence of claimant's position in his seat while driving the bus. In support of his opinion, Plummer explained that the lumbar x-rays were essentially free of age-related degenerative changes, making it unlikely that degeneration occurred at T12. Plummer reasoned that work activity, which caused claimant to hunch forward in his bus seat and get bounced while driving the bus, most likely represented the major cause of his back pain.

Vetter then signed a concurrence letter opinion from SAIF. Vetter acknowledged that there was trickiness in reading the T12 level in the x-ray, but he was confident

that he could read the film based on his 40-plus years of experience. Ultimately, he continued to believe that idiopathic and non-work-related causes, including weightlifting activity and his history of sports, were responsible for claimant's back pain.

In response, Plummer signed a concurrence letter prepared by claimant's counsel. Plummer opined that claimant's back pain was between his shoulder blades, likely at T4, not at T12, and that if there was degeneration at T12, the pain would manifest at that level, not higher up. Plummer continued to believe that the lumbar x-ray he reviewed was nowhere clear enough to diagnose degenerative disc disease at T12, and so he ordered a thoracic spine x-ray. Although he did not personally review the x-ray, he relied on the radiologist's report, which was not independently received into evidence before the administrative law judge (ALJ), that noted there was no degeneration, including at the T12 level. He further explained that it was unlikely that there would be degenerative changes solely at T12 if there was no degeneration in the lumbar spine, which is the most weight bearing level of the spine. Plummer maintained that given the lack of degeneration, the location of pain, and the way claimant's body sat in the bus seat, claimant likely had a soft tissue issue characterized by a chronic strain or sprain, caused primarily by his work activities.

At the hearing before the ALJ, claimant testified that his pain was in his upper back, just below his shoulder blades, and that the symptoms were "similar to or identical to" the ones he described in the 2016 claim. He testified that he never experienced back pain or injuries while playing sports or lifting weights. He testified that Plummer treated his back issues and that he had discussed his weightlifting activities with Plummer.

In addition, a report by DeLapp, an occupational ergonomist, who performed an ergonomics evaluation, explained that the seats that the bus drivers used for 7.5 hours per day had a winged design to secure drivers in place while turning, however with drivers with broader shoulders, like claimant, the wings pushed the shoulders forward in an awkward and uncomfortable way. DeLapp concluded that

the current seat design was "problematic" and that it did not have mid- to upper-back support in the thoracic region of the back. DeLapp recommended additional support.

The ALJ set aside the 2022 denial. In an opinion and order, the ALJ noted that Vetter and Plummer disagreed as to what was causing claimant's symptoms. The ALJ explained that,

> "[a]ssuming that Dr. Plummer correctly indicated * * * that the radiologist's report of the thoracic x-ray he ordered after reading Dr. Vetter's opinion stated there were no signs of degenerative changes at any thoracic level, including T12, it is not clear why Dr. Vetter concluded based on his review of the earlier x-rays that there were degenerative changes at T12."

The ALJ reasoned that "[o]ther evidence in the record tends to provide support for Dr. Plummer's conclusion that claimant's condition represents a soft tissue problem, rather than a disc or bony problem[,]" pointing to DeLapp's report. In that report, DeLapp explained that the seat design was "problematic" because it altered claimant's posture forward in an awkward position, causing discomfort. The ALJ also cited Fox's assertion that claimant's pain appeared to be from tension, likely related to his employment. As noted, the ALJ ultimately concluded that claimant sustained his burden of proof to establish a compensable occupational disease and set aside the 2022 denial.

Employer sought review by the board, asserting that Plummer's opinion was unpersuasive. Employer argued that Plummer did not address the relative contribution of a previously denied 2016 back condition or explain how the 2016 condition was different than the one at issue in this case and that reliance on the radiologist's report was improper. The board rejected employer's arguments and affirmed the ALJ's decision. The board explained that no medical expert identified the previously denied 2016 back condition as a potential cause of the condition at issue in this case and that no medical expert opined that the previously denied back condition is the same as the one at issue here. For that reason and those articulated by the ALJ, the board ultimately concluded that the record persuasively established

that claimant's occupational disease claim was compensable and affirmed the ALJ's order. Employer now seeks judicial review.

On judicial review, employer advances two assignments of error challenging the board's order. We begin with the first assignment, in which employer contends that the board exceeded its role as a lay factfinder and otherwise erred as a matter of law in its treatment of the medical evidence. Specifically, employer contends that Plummer did not engage in the legally required analysis for determining the major contributing cause because he did not properly weigh the employment conditions, which were determined not to be compensable for identical pain complaints in 2016. Employer asserts that "claimant's expert must at least address why claimant's work exposure now results in a compensable occupational disease because identical back symptoms were previously determined not compensably related to his work exposure." (Emphasis omitted.) Employer maintains that it is the lack of consideration and explanation regarding claimant's past and present work exposure that leads to the legal error. In response, claimant remonstrates that the 2016 claim involved the T9 level, whereas this claim involves the T4 level, and thus they are different areas of the back. Claimant contends that regardless of whether these were separate areas, Plummer was not required to analyze the 2016 denial because no physician or provider attached any significance to the previously denied claim and there is no medical opinion to suggest that the 2016 claim work activities contributed to the current condition. In their reply, employer argues that Plummer himself put the 2016 denial at issue by agreeing that claimant's current pain was similar to "what [claimant] had experience in the past."

The difficulty with employer's argument, however, is that, despite its assertion that this challenge is one of law, employer's argument is essentially a substantial-evidence challenge. That is, we understand employer to dispute Plummer's conclusion that claimant's work is a major contributing cause to claimant's back condition and to argue that Plummer's opinion was deficient because he did not address claimant's 2016 claim. We do not view that argument—*viz.*,

the sufficiency of Plummer's opinion—as a legal argument. Rather, that is an assertion that involves the typical "battle of the experts" challenge, where doctors or medical experts disagree as to whether a work incident was a material cause of the claimant's injuries. Although employer presents arguments regarding why Plummer's opinion is not persuasive, it does not demonstrate legal error. That is, the board was free to accept or reject Plummer's opinion as persuasive on the matter.

The "battle of the experts" argument leads us to employer's second assignment of error. In addition to the argument described above, employer asserts that substantial evidence and reason do not support the board's rejection of Vetter's reading of claimant's x-rays as "not clear" in favor of Plummer's recollection of a radiologist's report that was not submitted into evidence. Employer contends that it is improper for the board to rely on medical reports not submitted as evidence to make factual findings. Claimant remonstrates that the ALJ and board did not rely on a report not in the record; rather, there was a reliance on Plummer's opinion, which relied only in part on the radiologist's report.

The question for our review, then, is whether there is substantial evidence to support the board's determination. ORS 183.482(8)(c). Substantial evidence exists to support a factual finding "when the record, viewed as a whole, would permit a reasonable person to make that finding." *Id.*; *see also SAIF v. Pepperling,* 237 Or App 79, 84-85, 238 P3d 1013 (2010) (explaining that, "[i]n reviewing the board's evaluation of [an expert's] opinion, we do not substitute our judgment for that of the board; rather, we determine whether the board's evaluation of that evidence was reasonable"). Moreover, a board order must be supported by "substantial reason." *Taylor v. SAIF*, 295 Or App 199, 203, 433 P3d 419 (2018), *rev den*, 365 Or 194 (2019). If a board order articulates the reasoning that leads from the facts found to the conclusions drawn, then it is supported by substantial reason. *Id.* In a case involving conflicting medical evidence, "we will reverse the board 'only when the credible evidence apparently weighs overwhelmingly in favor of one finding and the [b]oard finds the other without giving a persuasive

explanation.'" *SAIF v. Pruitt*, 198 Or App 253, 258, 108 P3d 586 (2005) (quoting *Armstrong v. Astern-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1998)).

Applying our standard of review, we conclude that the board's order is supported by substantial evidence and reason. Although Plummer and Vetter provided competing opinions regarding the cause of the back condition, there is evidence that Plummer reviewed claimant's medical history and medical reports, treated claimant for back pain, and was aware of claimant's weightlifting and sports history, and, based on the information gathered from those diagnostic methods, Plummer concluded that claimant's back condition was a soft tissue issue. *See SAIF v. Lewis*, 335 Or 92, 101, 58 P3d 814 (2002) (explaining that medical personnel employ a range of diagnostic methods, including consulting with other health care professionals, examining the patient's medical records, and interviewing the patient, and concluding that "[i]nformation gleaned from such sources may be sufficient to establish that a claimant had or has an indication of injury or disease"). The board was entitled to evaluate the persuasiveness of Plummer's conclusion based on his methods and reasoning. Further, Plummer opined that degeneration at T12 would not explain the pain at higher levels in claimants back, and the ALJ explained, and the board agreed, that Plummer's opinion was more consistent with the evidence presented by Fox and DeLapp. Thus, we conclude that there is substantial evidence to support the board's findings and that the board articulated its reasoning as to why it was persuaded by Plummer's opinion rather than Vetter's. Although the board could have viewed the evidence in more than one way, the board's findings and conclusions are supported by substantial evidence and reason.

Affirmed.